FILED
 2013 Jan-23  PM 02:20
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MARY BILLINGSLEY, FANNIE THRASH, on behalf of themselves and all other similarly situated,**<br><br>    Plaintiffs,<br><br>v.<br><br>**CITI TRENDS, INC.,**<br><br>    Defendant. | ]<br>]<br>]<br>]<br>]<br>]   4:12-CV-0627-KOB<br>]<br>]<br>]<br>]<br>] |

### MEMORANDUM OPINION AND ORDER

This matter comes before the court on "Plaintiffs' Motion for Conditional Certification and Court Approved Notice Pursuant to § 216(b) of the Fair Labor Standards Act" and the plaintiffs' "Motion to Strike and for Entry of Protective Order." (Docs. 23 and 42). Plaintiffs Fannie Thrash and Mary Billingsley filed this case against Defendant Citi Trends, Inc. on behalf of themselves and all other similarly-situated Store Managers ("SMs") on February 12, 2012, alleging violations of the FLSA's overtime provisions. The court held a hearing on the motion for conditional certification on January 14, 2013. For the reasons more fully stated on the record, the court GRANTS the motion to conditionally certify the class and send court-approved notice to potential opt-in plaintiffs and GRANTS IN PART and DENIES IN PART the plaintiffs' motion for corrective action in their motion to strike and for entry of protective order.

I.   Background

Citi Trends employs over 5,000 associates in over 480 stores in 27 states. The country is divided into 4 Regions, and each Region is headed by a Regional VP of Store Operations. Each Region is further divided into Districts. Each District is managed by a District Manager who

coaches, counsels, and trains SMs in their District. The District Managers are the SMs' direct supervisors, but the SM is the "ultimate and final authority at the store level." (Doc. 33, at 11). Citi Trends claims that there is no typical Citi Trends store, and that every store varies based on location, setting, the needs of its shoppers, and operations of the store.

Citi Trends classifies every SM as "salary/exempt" and not entitled to overtime, and all SMs operate under identical job descriptions. Citi Trends has a uniform job description for all SMs nationwide but admits that the day-to-day experiences of SMs can be very different depending on the store in which they work. The plaintiffs claim that Citi Trends has had a uniform policy and practice of consistently requiring SMs to work over 40 hours per week without paying them overtime in contravention of the FLSA's requirements. Citi Trends admits that store size, sales volume, and other factors may result in SMs sometimes performing tasks generally performed by their subordinates, but the performance of these duties is never expected to diminish an SM's authority or ability to effectively manage the store.

II.     Legal Standard

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), provides that "any one or more employees similarly situated" may maintain an action against an employer for violations of the FLSA.  Section 16(b) further provides that "[n]o employee shall be a party Plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." The Eleventh Circuit has held that "[t]he 'opt-in' provisions of [29 U.S.C.  216(b)] convey upon a named plaintiff . . . the right to try to seek damages in the amounts allegedly due and not paid by the employer in accordance with the [FLSA], on behalf of himself or herself and also on behalf of other employees 'similarly

situated.'" *Dybach v. Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991). The FLSA "opt-in" procedure was created "to serve the interests of judicial economy through resolution in a single proceeding of claims stemming from common issues of law and fact and to aid in the vindication of plaintiffs' rights by lowering the individuals' costs with a pooling of claims and resources." *Bernard v. Household Int'l*, 231 F. Supp. 2d 433, 435 (E.D. Va. 2002).

A plaintiff bears the burden of demonstrating a "reasonable basis" for his claim of class-wide harm. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996) (citing *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983)). A plaintiff "may meet this burden, which is not heavy, by making substantial allegations of class-wide [harm], that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary.'" *Id.* (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 406-07 (D.N.J. 1988)).

The Eleventh Circuit recommends that district courts adopt a two-tiered approach to notification and certification of opt-in collective actions under 29 U.S.C. § 216(b), addressing at two different stages the question of whether plaintiffs are "similarly situated." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218-19 (11th Cir. 2001). The Eleventh Circuit described the two-tiered approach as follows:

> The first determination is made at the so-called 'notice stage.' At the notice stage, the district court makes a decision -- usually based only on the pleadings and any affidavits which have been submitted -- whether notice of the action should be given to potential class members.
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery.

*Hipp*, 252 F.3d at 1218-19 (quoting *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).  The Eleventh Circuit noted that the "two-tiered approach to certification of § 216(b) opt-in classes . . . appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases." *Id.* at 1219.

To prevail on a motion seeking conditional certification of a collective action, a plaintiff must show that (1) other employees exist who desire to opt-in and (2) the employees are similarly situated with respect to their job requirements and pay provisions. *Hipp*, 252 F.3d at 1219; *Dybach*, 942 F.2d at 1567-68.  Where "consents to [participate in the] suit [have] already [been] filed" district courts in the Eleventh Circuit have found that, "for purposes of deciding [a] motion for conditional collective action certification," the already-filed consents to opt-in established "that there were persons . . . who would join in [the] suit if they had notice of the suit." *See Barron v. Henry Cty. School Sys.*, 242 F. Supp. 2d 1096, 1101 (M.D. Ala. 2003).

The "similarly situated" requirement of 29 U.S.C. § 216(b) "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." *Grayson*, 79 F.3d at 1095. To show that other employees are "similarly situated" for purposes of first-tier consideration for conditional certification, plaintiffs "need only show that their positions are similar, not identical, to the positions held by the putative class members." *Hipp*, 252 F.3d at 1217 (citing *Grayson*, 79 F.3d at 1101). Plaintiffs can meet the burden of showing members of a class are "similarly situated" by "'making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 363-65 (M.D. Ala. 1999) (quoting

4

*Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

III.   Legal Analysis

    A.   Motion for Corrective Letter or Court Supervised Notice

The court deferred ruling on the plaintiffs' request for a corrective letter or court supervised notice that was embedded in the motion to strike. (Doc. 51, at 10-11). After the parties' May 31, 2012 Status Conference and before the Plaintiffs' deadline for filing their Motion for Conditional Certification and Notice, Citi Trends initiated company-wide in-person meetings between two corporate representatives and its SMs, who are potential collective class members in this case. At these meetings, with only a few exceptions, every SM completed a fill-in-the-blank declaration about their job duties (doc. 40-7 and following) and signed an arbitration agreement that bound every SMs to arbitrate any claims he or she had against Citi Trends (doc. 47-6). The Human Resources Representative also presented every SM with a disclosure about this lawsuit and the effect of the arbitration agreement on his or her rights in the lawsuit. (Doc. 47-2).

As the court expressed in its memorandum opinion on the motion to strike, the individualized meetings that occurred between SMs and Citi Trends Human Resources Representatives are cause for concern. At these meetings, SMs waived their rights to bring any claims against Citi Trends in court, including participation in this litigation.

Especially when the employer-employee relationship is in play, the possibility of abuse is ripe in these type of unilateral communications. The Eleventh Circuit recognized the potential for coercion in such situations and held that the court had authority in Rule 23 class actions to

invalidate opt-outs when they were procured through fraud, duress, or other improper conduct. *Kleiner v. First Nat. Bank of Atl.*, 751 F.2d 1193, 1212 (11th Cir. 1985). In cases such as this where Citi Trends has an obvious interest in diminishing the size of the potential class, a risk exists that these types of unsupervised communications will sabotage the employee's independent decision-making regarding their involvement in the action. *See id.* at 1206. The court takes seriously its responsibility to see that an employer not engage in coercion or duress to decrease the size of a collective class and defeat the purpose of the collective action mechanism of the FLSA. Because of these concerns as more fully stated on the record, the court will GRANT IN PART AND DENY IN PART the Plaintiffs' motion for court-supervised notice. Any potential plaintiffs who felt they signed the mandatory arbitration agreement under duress will still be allowed to opt-in to this collective action; the language of the notice will reflect that right.

   B. <u>Motion to Conditionally Certify the Class</u>

In this case, Citi Trends does not dispute that the plaintiffs meet the first requirement of showing that others desire to join the lawsuit. At the time of the filing of the motion for conditional certification, six former SMs had filed consents to join the action initiated by the two plaintiffs. Citi Trends, however, does argue that the plaintiffs cannot show any reasonable basis for the class of potential plaintiffs being similarly situated.

The plaintiffs argue that the potential opt-ins are similarly situated because every SM "is subjected to the exact same company-wide, uniform job description, responsibilities, and pay practices." (Doc. 24, at 6). Citi Trends characterizes all SMs as "salary/ exempt" regardless of

which Region, District, or store they work in and regardless of store size, level of shrinkage, volume of merchandise, or any other store-specific characteristic. The plaintiffs argue that this universal classification results in a "class-wide legal issue that will have to be uniformly decided" for all Citi Trends SMs. (Doc. 24, at 8).  The plaintiffs rely on the declarations of eight SMs from Alabama, Florida, Wisconsin, and Illinois who say they had to perform non-exempt duties for eighty percent of their working time and thus were not exempt under the FLSA.

The court finds that the declarations of the opt-ins and the plaintiffs' allegations that they were victims of Citi Trends' policy or practice of misclassifying employees as exempt are sufficient to find the potential class similarly situated, especially when Citi Trends admits that the challenged action is a company-wide policy.[1]  Under the "fairly lenient" standard for conditional certification of a class in an FLSA collective action and for the reasons as stated on the record, the court GRANTS the plaintiff's motion for conditional certification and court-approved notice. *Hipp*, 252 F.3d at 1218-19.

DONE and ORDERED this 23rd day of January, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

---

[1] Both the Plaintiffs and Citi Trends submitted sworn declarations in support of their motion and response that consisted of "cookie cutter language." Like ships passing in the night, neither parties' affidavits acknowledged the possibility of SMs having concurrent managerial and non-managerial responsibilities. Regardless of some overlap of concurrent responsibilities, the court finds sufficient evidence of similarities between the putative class members to meet the lenient standard as set forth in *Hipp*.